# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **RENA ANDREWS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **Civil Action No. 7:18-cv-125** |
| **MANUEL VALDEZ, SUPREME** | § | |
| **LENDING, and FEDERAL HOME LOAN** | § | |
| **MORTGAGE CORPORATION,** | § | |
| **Defendant.** | § | |

<u>**AFFIDAVIT OF** _____</u>

Before me, the undersigned notary, personally appeared <u>David Wysor</u>, a person known to me, who having been sworn stated on oath:

1.    My name is <u>David Wysor</u>. I am over the age of 21 years, have never been convicted of a crime, and am fully competent to make this affidavit. I have personal knowledge of all the facts stated herein, and all statements of fact contained herein are true and correct.

2.    I have been working at Everett Financial, Inc. d/b/a Supreme Lending ("Supreme Lending") for <u>4</u> years. I have held a position as <u>Director of Servicing</u> at Supreme Lending since <u>Year 2014</u>. In this position, my job duties include researching the loan histories of parties who are in litigation with Supreme Lending; determining whether or not these parties made timely principal, interest, escrow and other payments on their mortgages that Supreme Lending services; reviewing the loan files that Supreme Lending has for these parties to determine whether the loans were properly originated and/or serviced as may be appropriate for the particular case; reviewing the foreclosure files to determine whether foreclosure was proper and notices were properly given; and serving as Supreme Lending's corporate representative in trials, court hearings, depositions, and mediations as may be needed.

3.      I researched and reviewed all of the necessary documents in Supreme Lending's possession regarding Plaintiff Rena Andrew's ("Plaintiff" or "Borrower") loan, and the statements in this Affidavit are based upon my research and review of these documents.

4.      At all times relevant hereto, Supreme Lending was the loan servicer for the owner of the loan, which was Federal National Mortgage Association.

5.      On or about February 29, 2016, the Borrower executed a *Note* (the "Note") for $65,000.00 payable to Supreme Lending.  (Exhibit A-1.)  Concurrently with the Borrower's execution of the Note, Borrower executed a *Deed of Trust* (the "Deed of Trust") securing the repayment of the Note with the real property commonly known as 14103 W. County Road 122, Odessa, TX 79765 (the "Property").  (Exhibit A-2.)  (The Note and Deed of Trust shall collectively be referred to as the "Loan.")  In the Deed of Trust, Supreme Lending was identified as the Lender. (*Id.*) Mortgage Electronic Registration Systems, Inc. (solely as nominee for Lender and Lender's successors and assigns) ("MERS") was named the beneficiary of the Deed of Trust. (*Id.*)

6.      The Borrower did not tender all payments on the Note when due. The Loan became delinquent in August 2017.

7.      Supreme Lending through its counsel, Mackie Wolf Zientz & Mann, P.C., on or about October 6, 2017 sent to the Borrower, via United States certified and regular mail to 14103 W. County Road 122, Odessa, TX 79765, Notices of Default with Intent to Accelerate ("Notice of Default").  (Exhibit A-3.)  In the Notices of Default, the Borrower was advised that the Loan was in default and that she needed to tender $2,349.46 within 30 days to become current on the loan. (*Id.*)  The Borrower was also informed in the Notice of Default that her failure to timely

bring the loan current would result in an acceleration of the debt. (*Id.*) No payments were made to Defendants to cure the default or reinstate the loan after October 6, 2017.

8.     On December 1, 2017, Supreme Lending through their counsel, Mackie Wolf Zientz & Mann, P.C., sent via United States certified and regular mail to the Borrower at 14103 W. County Road 122, Odessa, TX 79765, Notice of Acceleration indicating that Loan had been accelerated. (Exhibit A-4.) No payments were made to Defendants to cure the default or reinstate the loan after December 1, 2017.

9.     On January 10, 2018, Supreme Lending through their counsel, Mackie Wolf Zientz & Mann, P.C., sent via United States certified and regular mail to the Borrower at 14103 W. County Road 122, Odessa, TX 79765, Notice of Foreclosure Sale indicating that the Property would be sold to the highest cash bidder. (Exhibit A-5.) The Notice indicated the date, time and place of the scheduled sale. (*Id.*) No payments were made to Defendants to cure the default or reinstate the loan prior to February 6, 2018, the scheduled date of the foreclosure sale.

10.     At the scheduled date, time and place, Manuel Valdez ("Valdez") submitted the highest cash bid for the Property. On February 20, 2018, the duly appointed Substitute Trustee executed a Foreclosure Sale Deed that conveyed the Property to Valdez. (Exhibit A-6.) The Foreclosure Sale Deed was recorded in the Real Property Records of Midland County, Texas on February 23, 2018 as Document No. 2018-4930. (*Id.*)

9.     I am a custodian of records for Supreme Lending. Attached hereto are business records of Supreme Lending. These said records are kept by Supreme Lending in the regular course of business, and it was the regular course of practice of Supreme Lending for an employee or representative of Supreme Lending with knowledge of the act, event, condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be

included in such records; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the originals or exact duplicates of the originals. These records are also identified as exhibits to this Affidavit as indicated below:

A-1.    Note dated February 29, 2016;

A-2.    Deed of Trust dated February 29, 2016;

A-3.    Notice of Default and Intent to Accelerate dated October 6, 2017;

A-4.    Notice of Acceleration of Loan Maturity dated December 1, 2017;

A-5.    Notice of Foreclosure Sale dated January 10, 2018; and

A-6.    Recorded Foreclosure Sale Deed dated February 20, 2018.

FURTHER AFFIANT SAYETH NAUGHT.

Printed Name: _David Wysor_____

**STATE OF**_____Texas_____ §
                                          §
**COUNTY OF**  _Dallas_____ §

On this, the _20th_ day of ___July_ of 2018, before me, the undersigned Notary Public, personally appeared _David Wysor, Director of Servicing_ , personally known to me (or satisfactory proven) to be the person whose name is subscribed to the within instrument, and acknowledged that they executed the foregoing instrument for the purposes there in contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

PETER LEO RODRIGUEZ
My Notary ID # 128011382
Expires August 20, 2021

Notary Public in and for the State of Texas_____

Printed Name:  _Peter Leo Rodriguez_____

My commission expires: _August 20, 2021_____

# EXHIBIT A-1

Loan Number: ██████████                                    MIN: ██████████████

# NOTE

**February 29, 2016**                    **ODESSA, TEXAS**

**14103 W COUNTY ROAD 122**
**ODESSA, TX 79765**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$65,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, A TEXAS CORPORATION**.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.875%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **April 1, 2016**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2046**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING**
**14801 QUORUM DRIVE, SUITE 300**
**DALLAS, TEXAS  75254**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$305.65**.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

---

**MULTISTATE FIXED RATE NOTE** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          **Form 3200   1/01**
Page 1 of 3

IDS, Inc.



Loan Number: ███████████                                         MIN: █████████████████

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

---

**MULTISTATE FIXED RATE NOTE** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                 Form 3200   1/01
Page 2 of 3

IDS, Inc.



Loan Number: ████████                    MIN: ████████████

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Rena Roxanna Andrews_ _____ (Seal)          _____ (Seal)
RENA ROXANNA ANDREWS          -Borrower                                          -Borrower
                                                                      _(Sign Original Only)_

Loan originator (organization): **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING**; NMLS #: ████
Loan originator (individual): **MELISSA RENEE PRIETO**; NMLS #: ████

---

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200   1/01
                                    Page 3 of 3

IDS, Inc.



# EXHIBIT A-2

***** Electronically Recorded Document *****

# Midland County

### Alison Haley
### County Clerk

---

Document Number: 2016-6318

Recorded As        : ERX-RECORDING


Recorded On:        March 07, 2016

Recorded At:        03:35:44 pm

Number of Pages:    15


Recording Fee:      $78.00


Parties:

Direct-

Indirect-


Receipt Number:     495761

Processed By:       Alicia Welch

---

## ***THIS PAGE IS PART OF THE INSTRUMENT***

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

---



State of Texas
County of Midland
I hereby certify that this instrument was FILED on the date and at the time stamped hereon by me and was duly
RECORDED in the volume and page of the named RECORDS of Midland County, Texas as stamped hereon.

County Clerk
Midland County, Texas

WEST TEXAS ABSTRACT
GF# 4811160091KP
BA 164003

AFTER RECORDING RETURN TO:
**EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING**
**14801 QUORUM DRIVE, SUITE 300**
**DALLAS, TEXAS 75254**

This instrument was prepared by:
**BLACK, MANN, & GRAHAM LLP**
**2905 CORPORATE CIRCLE**
**FLOWER MOUND, TEXAS 75028**

Loan Number ███████████

_____ [Space Above This Line For Recording Data] _____

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

MIN: ███████████
SIS Telephone #: **(888) 679-MERS**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **February 29, 2016**, together with all Riders to this document.

**(B) "Borrower"** is **RENA ROXANNA ANDREWS, SINGLE WOMAN**. Borrower is the grantor under this Security Instrument.

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS          Form 3044  1/01
Page 1 of 14

IDS, Inc.                                                                        Borrower(s) Initials  _____



**(C) "Lender"** is EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING. Lender is **A TEXAS CORPORATION**, organized and existing under the laws of **TEXAS**.
Lender's address is **14801 QUORUM DRIVE, SUITE 300, DALLAS, TEXAS 75254**. Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D) "Trustee"** is **Scott Everett**
Trustee's address is **14801 Quorum Drive, Suite 300, Dallas, TEXAS 75254, Dallas County.**

**(E) "MERS"** is **Mortgage Electronic Registration Systems, Inc.** MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026,** tel. **(888) 679-MERS.**

**(F) "Note"** means the promissory note signed by Borrower and dated **February 29, 2016**. The Note states that Borrower owes Lender **SIXTY-FIVE THOUSAND AND NO/100** Dollars (U.S. **$65,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2046.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ VA Rider |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |
| ☐ Other [Specify] | | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

---

Form 3044  1/01

Borrower(s) Initials 

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **MIDLAND**:

> **LOT EIGHT (8), BLOCK ONE (1), RIDGEWOOD SUBDIVISION, A SUBDIVISION OF MIDLAND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF OF RECORD IN CABINET A, PAGE 122, PLAT RECORDS OF MIDLAND COUNTY, TEXAS.**

Parcel ID Number: **R000041384**

which currently has the address of:   **14103 W COUNTY ROAD 122**
                                      **ODESSA, TEXAS 79765**                                    ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS           Form 3044  1/01
Page 3 of 14

IDS, Inc.                                    Borrower(s) Initials 



shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                       Form 3044  1/01
IDS, Inc.                                                                                          Borrower(s) Initials 

Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

---

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
Form 3044  1/01

IDS, Inc.

Borrower(s) Initials  _____

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work



is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.





Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.





Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If

---

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                                     Form 3044  1/01
IDS, Inc.                                                                                                        Borrower(s) Initials  _____

Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                                      Form 3044  1/01

IDS, Inc.

Borrower(s) Initials 



the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                      Form 3044  1/01
Page 11 of 14
IDS, Inc.                                                        Borrower(s) Initials



without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☒ Purchase Money.

---

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                    Form 3044  1/01

IDS, Inc.                                                                    Borrower(s) Initials 



The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____  -Witness          _____  -Witness



_____  (Seal)            _____  (Seal)
RENA ROXANNA ANDREWS              -Borrower                                            -Borrower

**STATE OF TEXAS**
County of _____ ss:

Before me _____ on this day personally appeared **RENA ROXANNA ANDREWS**, known to me (or proven to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _29_ day of _Feb_____, _2016_.

My Commission Expires: _____

(Seal)

R. BLAKE
Notary Public
State of Texas
ID # 125023446
Comm. Expires 08-20-2016

_____
Notary Public

Loan originator (organization): **EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING**; NMLS #: **2129**
Loan originator (individual): **MELISSA RENEE PRIETO**; NMLS #: **401081**

---

# EXHIBIT A-3

Mackie, Wolf & Zientz, PC
PO Box 9077
Temecula, CA 92589-9077



9307 1100 1170 0931 5369 79

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

20171006-89

RENA ROXANNA ANDREWS
14103 W COUNTY ROAD 122
ODESSA, TX 79765-8934

Send Correspondence to:
Mackie, Wolf & Zientz, PC
14160 North Dallas Parkway
Suite 900
Dallas, TX  75254

# MACKIE WOLF ZIENTZ & MANN, P.C.

ATTORNEYS AT LAW
PHONE (214) 635-2650  FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 NORTH DALLAS PARKWAY
DALLAS, TEXAS 75254
* PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

16-000039-975
October 6, 2017
CERT MAIL
RENA ROXANNA ANDREWS
14103 W COUNTY ROAD 122
ODESSA, TX 79765

RE:    Loan No.:    XXXXXX8655
MWZM File No.: 16-000039-975

**NOTICE OF DEFAULT AND INTENT TO ACCELERATE**

Dear RENA ROXANNA ANDREWS:

We have been retained by SUPREME LENDING, Mortgage Servicer for EVERETT FINANCIAL INC., DBA SUPREME LENDING , the current Mortgagee of the Note and Deed of Trust related to the above referenced loan. A servicing agreement between the Mortgagee, whose address is:

EVERETT FINANCIAL INC., DBA SUPREME LENDING
c/o SUPREME LENDING
14801 QUORUM DRIVE, SUITE 300
DALLAS, TX 75254

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt.

You are delinquent in the payment of installments under the terms of your Note and your loan has been declared in default. Demand is hereby made for payment in full of the balance owed. According to the Mortgage Servicer's records, the total balance due as of the date of this notice is **$2,349.46**. As a result of accrued interest and other charges, the total balance due may be greater on the date of your payment and an adjustment may be required to fully reinstate the loan. You may obtain the precise amount due by contacting this firm at **(214) 635-2650**. Payment must be made by cashier's check, certified check or money orders.

You are hereby notified that if the default has not been cured within thirty (30) days of the date of this notice, the Mortgage Servicer will thereafter accelerate the maturity date of the Note, and the entire unpaid principal balance plus all unpaid accrued and earned interest will become immediately due and payable.

If the maturity date of the Note is accelerated, the Mortgage Servicer will commence in scheduling a foreclosure sale of the property according to the terms of the Deed of Trust and Texas Property Code §51.0025. If a deficiency remains on your debt after the foreclosure sale, the Mortgage Servicer may seek to hold you personally liable for such deficiency.

Federal law allows you to dispute the validity of the debt, or any portion thereof, within thirty days (30) after receipt of this notice. If you do not, the debt will be assumed valid by the firm. If you notify the firm in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed, the firm will obtain verification of the debt and will mail a copy of the verification to you. On your written request, within the thirty-day period for verification, the firm will provide you with the name and address of the original creditor. Additionally, all of the obligors and guarantors (if any) have the right to reinstate after acceleration, subject to the terms of the Deed of Trust, and the right to bring a court action to assert the non-existence of a default or any other defense which they may have.

If this debt has been discharged in bankruptcy or you are not obligated on this debt, the Mortgage Servicer is not attempting to collect this debt from you personally.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.



Mackie, Wolf & Zientz, PC
PO Box 9077
Temecula, CA 92589-9077



9307 1100 1170 0931 5369 86

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

20171006-89

Send Correspondence to:
Mackie, Wolf & Zientz, PC
14160 North Dallas Parkway
Suite 900
Dallas, TX 75254

RENA ROXANNA ANDREWS
2501 MAURICE RD
ODESSA, TX 79763-4800



DMND

# MACKIE WOLF ZIENTZ & MANN, P.C.

ATTORNEYS AT LAW
PHONE (214) 635-2650  FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 NORTH DALLAS PARKWAY
DALLAS, TEXAS 75254
* PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

16-000039-975
October 6, 2017
CERT MAIL
RENA ROXANNA ANDREWS
2501 MAURICE RD
ODESSA, TX 79763

RE:    Loan No.:        XXXXXX8655
       MWZM File No.: 16-000039-975

**NOTICE OF DEFAULT AND INTENT TO ACCELERATE**

Dear RENA ROXANNA ANDREWS:

We have been retained by SUPREME LENDING, Mortgage Servicer for EVERETT FINANCIAL INC., DBA SUPREME LENDING , the current Mortgagee of the Note and Deed of Trust related to the above referenced loan. A servicing agreement between the Mortgagee, whose address is:

EVERETT FINANCIAL INC., DBA SUPREME LENDING
c/o SUPREME LENDING
14801 QUORUM DRIVE, SUITE 300
DALLAS, TX 75254

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt.

You are delinquent in the payment of installments under the terms of your Note and your loan has been declared in default. Demand is hereby made for payment in full of the balance owed. According to the Mortgage Servicer's records, the total balance due as of the date of this notice is **$2,349.46**. As a result of accrued interest and other charges, the total balance due may be greater on the date of your payment and an adjustment may be required to fully reinstate the loan. You may obtain the precise amount due by contacting this firm at **(214) 635-2650**. Payment must be made by cashier's check, certified check or money orders.

You are hereby notified that if the default has not been cured within thirty (30) days of the date of this notice, the Mortgage Servicer will thereafter accelerate the maturity date of the Note, and the entire unpaid principal balance plus all unpaid accrued and earned interest will become immediately due and payable.

If the maturity date of the Note is accelerated, the Mortgage Servicer will commence in scheduling a foreclosure sale of the property according to the terms of the Deed of Trust and Texas Property Code §51.0025. If a deficiency remains on your debt after the foreclosure sale, the Mortgage Servicer may seek to hold you personally liable for such deficiency.

Federal law allows you to dispute the validity of the debt, or any portion thereof, within thirty days (30) after receipt of this notice. If you do not, the debt will be assumed valid by the firm. If you notify the firm in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed, the firm will obtain verification of the debt and will mail a copy of the verification to you. On your written request, within the thirty-day period for verification, the firm will provide you with the name and address of the original creditor. Additionally, all of the obligors and guarantors (if any) have the right to reinstate after acceleration, subject to the terms of the Deed of Trust, and the right to bring a court action to assert the non-existence of a default or any other defense which they may have.

If this debt has been discharged in bankruptcy or you are not obligated on this debt, the Mortgage Servicer is not attempting to collect this debt from you personally.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.



# EXHIBIT A-4

Mackie, Wolf & Zientz, PC
PO Box 9077
Temecula, CA 92589-9077

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

9307 1100 1170 0938 3035 29

20171204-89

RENA ROXANNA ANDREWS
14103 W COUNTY ROAD 122
ODESSA, TX 79765-8934

Send Correspondence to:
Mackie, Wolf & Zientz, PC
14160 North Dallas Parkway
Suite 900
Dallas, TX 75254

ACC4

# MACKIE WOLF ZIENTZ & MANN, P.C.

ATTORNEYS AT LAW
PHONE (214) 635-2650. FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 NORTH DALLAS PARKWAY
DALLAS, TEXAS 75254
*PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

16-000039-975
December 1, 2017
CERT MAIL
RENA ROXANNA ANDREWS
14103 W COUNTY ROAD 122
ODESSA, TX 79765

RE:     LOAN No. XXXXXX8655
MWZM No. 16-000039-975

### NOTICE OF ACCELERATION OF LOAN MATURITY

Dear RENA ROXANNA ANDREWS ,

We have been retained by SUPREME LENDING, Mortgage Servicer for EVERETT FINANCIAL INC., DBA SUPREME LENDING , the current Mortgagee of the Note and Deed of Trust related to the above referenced loan. A servicing agreement between the Mortgagee, whose address is:

EVERETT FINANCIAL INC., DBA SUPREME LENDING
C/O SUPREME LENDING
14801 QUORUM DRIVE, SUITE 300
DALLAS, TX 75254

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt. We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note. Notification was sent that default had occurred in the payment of the Note and that SUPREME LENDING would accelerate the maturity of the Note if you did not cure the default. Because of your failure to cure the default, the maturity date of the Note was accelerated effective 12/01/2017.

All unpaid principal and accrued interest on the Note are due and payable at this time. According to the Mortgage Servicer's records, the total balance due as of the date of this notice is $68,849.29. As a result of accrued interest and other charges, the total balance due may be greater on the date of your payment and an adjustment may be required to fully pay off the loan. You may obtain the precise amount due by contacting this firm at **(214) 635-2650**. Payment must be made by cashier's check, certified check or money orders.

Federal law allows you to dispute the validity of the debt, or any portion thereof, within thirty days (30) after receipt of this notice. If you do not, the debt will be assumed valid by the firm. If you notify the firm in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed, the firm will obtain verification of the debt and will mail a copy of the verification to you. On your written request, within the thirty-day period for verification, the firm will provide you with the name and address of the original creditor. Additionally, all obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure.

If this debt has been discharged in bankruptcy or you are not obligated on this debt, the Mortgage Servicer is not attempting to collect this debt from you personally.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.



# EXHIBIT A-5

Mackie, Wolf & Zientz, PC
PO Box 9077
Temecula, CA 92589-9077



9307 1100 1170 0943 3629 62

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

20180110-89

Send Correspondence to:
Mackie, Wolf & Zientz, PC
14160 North Dallas Parkway
Suite 900
Dallas, TX  75254

RENA ROXANNA ANDREWS
14103 W COUNTY ROAD 122
ODESSA, TX 79765-8934

REPOST1

# MACKIE WOLF ZIENTZ & MANN, P.C.

ATTORNEYS AT LAW
PHONE (214) 635-2650 FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900          UNION PLAZA
14160 NORTH DALLAS PARKWAY          124 WEST CAPITOL, SUITE 1560
DALLAS, TEXAS 75254          LITTLE ROCK, ARKANSAS 72201
* PLEASE RESPOND TO DALLAS OFFICE

16-000039-975
January 10, 2018
CERT MAIL
RENA ROXANNA ANDREWS
14103 W COUNTY ROAD 122
ODESSA, TX 79765

RE:    LOAN NO. XXXXXX8655
MWZM NO. 16-000039-975

### NOTICE OF FORECLOSURE SALE

Dear RENA ROXANNA ANDREWS,

We have been retained by SUPREME LENDING, Mortgage Servicer for EVERETT FINANCIAL INC., DBA SUPREME LENDING , the current Mortgagee of the Note and Deed of Trust related to the above referenced loan. A servicing agreement between the Mortgagee, whose address is:

EVERETT FINANCIAL INC., DBA SUPREME LENDING
C/O SUPREME LENDING
14801 QUORUM DRIVE, SUITE 300
DALLAS, TX 75254

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt. We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note. Notification was sent that default had occurred in the payment of the Note and that SUPREME LENDING would accelerate the maturity of the Note if you did not cure the default. Because of your failure to cure the default, the maturity date of the Note was previously accelerated.

All unpaid principal and accrued interest on the Note are due and payable at this time. You may obtain the precise amount to pay off the loan and prevent foreclosure by contacting this firm at **(214) 635-2650**. Payment must be made by cashier's check, certified check or money orders.

On Tuesday, 02/06/2018, the Trustee or Substitute Trustee will sell to the highest cash bidder, the property legally described in the enclosed Notice of Foreclosure Sale. The sale will occur at the Midland County Courthouse in the area designated by the Midland County Commissioner's Court, or if no such area has been designated by the Commissioner's Court then in the usual and customary location in that County. We have enclosed a copy of the Notice of Foreclosure Sale, which is being posted at the Midland County Courthouse in accordance with Texas law and the provisions of the Deed of Trust.

All obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure. If this debt has been discharged in bankruptcy or you are not obligated on this debt, the Mortgage Servicer is not attempting to collect this debt from you personally.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.

Enclosed:    Notice of Foreclosure Sale



# NOTICE OF FORECLOSURE SALE

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OR ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**1.** *Property to Be Sold*.  The property to be sold is described as follows: LOT EIGHT (8), BLOCK ONE (1), RIDGEWOOD SUBDIVISION, A SUBDIVISION OF MIDLAND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF OF RECORD IN CABINET A, PAGE 122, PLAT RECORDS OF MIDLAND COUNTY, TEXAS.

**2.** *Instrument to be Foreclosed*.  The instrument to be foreclosed is the Deed of Trust dated 02/29/2016 and recorded in Document 2016-6318 real property records of Midland County, Texas. .

**3.** *Date, Time, and Place of Sale*. The sale is scheduled to be held at the following date, time and place:

| | |
|---|---|
| Date: | 02/06/2018 |
| Time: | 10:00 AM |
| Place: | Midland County Courthouse, Texas at the following location: THE FOYER AND SOUTH ENTRANCE AT THE FRONT OF THE COURTHOUSE OR AS DESIGNATED BY THE COUNTY COMMISSIONER`S OFFICE or as designated by the County Commissioners Court. |

**4.** *Terms of Sale*.  The sale will be conducted as a public auction to the highest bidder for cash.  Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust.

**5.** *Obligations Secured*.  The Deed of Trust executed by RENA ROXANNA ANDREWS, provides that it secures the payment of the indebtedness in the original principal amount of $65,000.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. Everett Financial Inc., DBA Supreme Lending is the current mortgagee of the note and deed of trust and SUPREME LENDING is mortgage servicer.  A servicing agreement between the mortgagee, whose address is Everett Financial Inc., DBA Supreme Lending c/o SUPREME LENDING, 14801 Quorum Drive, Suite 300, Dallas, TX 75254 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

**6.** *Substitute Trustee(s) Appointed to Conduct Sale.* In accordance with Texas Property Code Sec. 51.0076, the undersigned attorney for the mortgage servicer has named and appointed, and by these presents does name and appoint SHELLEY NAIL, DONNA TROUT, JOHNIE EADS OR MICHAEL W. ZIENTZ, Substitute Trustee to act under and by virtue of said Deed of Trust.

| | |
|---|---|
| Mackie Wolf Zientz & Mann, P.C. | SHELLEY NAIL, DONNA TROUT, JOHNIE EADS |
| Brandon Wolf, Attorney at Law | OR MICHAEL W. ZIENTZ |
| L. Keller Mackie, Attorney at Law | c/o AVT Title Services, LLC |
| Lori Liane Long, Attorney at Law | 1101 Ridge Rd. Suite 222 |
| Tracey Midkiff, Attorney at Law | Rockwall, TX 75087 |
| Marissa Sibal, Attorney at Law | |
| Parkway Office Center, Suite 900 | |
| 14160 North Dallas Parkway | |
| Dallas, TX 75254 | |

16-000039-975
14103 W COUNTY ROAD 122
ODESSA, TX 79765

## Certificate of Posting

I am _____ whose address is c/o AVT Title Services, LLC, 1101 Ridge Rd., Suite 222, Rockwall, TX 75087. I declare under penalty of perjury that on _____ I filed this Notice of Foreclosure Sale at the office of the Midland County Clerk and caused it to be posted at the location directed by the Midland County Commissioners Court.



# EXHIBIT A-6

Doc-4930

***** **Electronically Recorded Document** *****

# Midland County
### Alison Haley
### County Clerk

---

Document Number:  2018-4930

Recorded As      :  ERX-RECORDING

Recorded On:           February 23, 2018

Recorded At:           09:12:36 am

Number of Pages:       5

Recording Fee:         $38.00

Parties:

              Direct-

              Indirect-

Receipt Number:        563180

Processed By:          Vangie Montemayor

---

### ***THIS PAGE IS PART OF THE INSTRUMENT***

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

---



**State of Texas**
**County of Midland**
I hereby certify that this instrument was FILED on the date and at the time stamped hereon by me and was duly
RECORDED in the named RECORDS of Midland County, Texas as stamped hereon.

                                             **County Clerk**
                                             **Midland County, Texas**

**FORECLOSURE SALE DEED**
**(With attached Affidavit and Notice of Foreclosure Sale for recording as one document)**

**Deed of Trust Date:** February 29, 2016

**Grantor(s):**      RENA ROXANNA ANDREWS

**Original Mortgagee:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING, ITS SUCCESSORS AND ASSIGNS

**Current Mortgagee:** Everett Financial Inc., DBA Supreme Lending

**Recording Information:** Document 2016-6318 of the real property records of Midland County, Texas.

**Property Legal Description:** LOT EIGHT (8), BLOCK ONE (1), RIDGEWOOD SUBDIVISION, A SUBDIVISION OF MIDLAND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF OF RECORD IN CABINET A, PAGE 122, PLAT RECORDS OF MIDLAND COUNTY, TEXAS.

**Date of Sale:** 02/06/2018      **Time of Sale:** 10:19 am

**Place of Sale:** THE FOYER AND SOUTH ENTRANCE AT THE FRONT OF THE COURTHOUSE OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE

**Buyer:** MANUEL VALDEZ
**Buyer's Mailing Address:** 2511 QUAIL RIDGE MIDLAND, TX 79706

**Amount of Sale:** $75,688.00

        By Deed of Trust, Grantor conveyed to SCOTT EVERETT, as Trustee, certain property for the purpose of securing and enforcing payment of the indebtedness and obligations therein described, including but not limited to the Note and all renewals and extensions of the note. SHELLEY NAIL, DONNA TROUT, JOHNIE EADS OR MICHAEL W. ZIENTZ were appointed Substitute Trustees per the terms of the Deed of Trust and Texas Property Code Sections 51.0075 and 51.0076 and were requested to enforce the trust Everett Financial Inc., DBA Supreme Lending , the current mortgagee of the Deed of Trust, who requested SHELLEY NAIL, DONNA TROUT, JOHNIE EADS OR MICHAEL W. ZIENTZ, as Substitute Trustee, to enforce the trust of the Deed of Trust.

        Pursuant to the requirements of the Deed of Trust and the laws of the state of Texas, written notice of the time, place, date, and terms of the public foreclosure sale of the Property was posted at the courthouse of Midland County, Texas, the county in which the Property is situated, and a copy of the notice was also filed with the county clerk of Midland County, Texas, each notice having been posted and filed for at least twenty-one days preceding the date of the foreclosure sale. Written notice of the time, date, place, and terms of the foreclosure sale was served on behalf of the current Mortgagee by certified mail on each debtor who, according to the records of the current Mortgagee, is obligated to pay any of the indebtedness and obligations. The certified-mail notices were timely sent by depositing the notices in the United States mail, postage prepaid in proper amount, and addressed to each debtor at the debtor's last known address as shown by the records of the current Mortgagee at least twenty-one days preceding the date of the foreclosure. Written notice of default and of the opportunity to cure the default to avoid acceleration of the maturity of the note was served on behalf of the current Mortgagee by certified mail on each debtor who, according to the records of the current Mortgagee, is obligated to pay any of the indebtedness and obligations. The certified-mail notices were timely sent by depositing the notices in the United States mail, postage prepaid in proper amount, and addressed to each

debtor at the debtor's last known address as shown by the records of the current Mortgagee at least thirty days preceding the date of the acceleration of the maturity of the note and the posting of the mortgaged Property for foreclosure.

In consideration of the premises and of the bid and payment of the amount of $75,688.00, the highest bid by Buyer, I, as Substitute Trustee, by virtue of the authority conferred on me in the Deed of Trust, have GRANTED, SOLD, and CONVEYED all of the Property to Buyer and Buyer's heirs and assigns, to have and to hold the Property, together with the rights, privileges, and appurtenances thereto belonging unto Buyer and Buyer's heirs and assigns forever. I, as the Substitute Trustee, do hereby bind Grantor and Grantor's heirs and assigns to WARRANT and FOREVER DEFEND the Property to Buyer and Buyer's heirs and assigns forever, against the claim or claims of all persons claiming the same or any part thereof.

Executed on 20 day of Feb , 2018.



SHELLEY NAIL, ~~DONNA TROUT, JOHNIE EADS OR MICHAEL W. ZIENTZ~~

STATE OF TEXAS          §
                        §
COUNTY OF Eaton         §

BEFORE ME, the undersigned authority, on this day personally appeared SHELLEY NAIL, ~~DONNA TROUT, JOHNIE EADS OR MICHAEL W. ZIENTZ~~, as Substitute Trustee, known to me to be the person whose name is subscribed to the foregoing instrument, and who acknowledged to me that he/she executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

Given under my hand and seal of office this 20 day of Feb , 2018.

Johnie G Eads
Notary Public, State of Texas

6180978655LAST4__/16-000039-975
FNMA

AFTER RECORDATION RETURN TO:
Mackie Wolf Zientz & Mann, P.C.
Parkway Office Center, Suite 900
14160 North Dallas Parkway
Dallas, Texas 75254

JOHNIE G. EADS
My Notary ID # 1600388
Expires September 19, 2021

## AFFIDAVIT

BEFORE ME, the undersigned on this day personally appeared Keller Mackie and after being duly sworn, deposed and states under oath, as follows:

1. I am over the age of eighteen (18), have not been convicted of a crime of moral turpitude and have personal knowledge of the facts contained in this affidavit.

2. All notices required pursuant to the terms of the Deed of Trust and Texas Property Code Section 51.002(b) and (d) were provided to the debtors.

3. In accordance with Texas Property Code Section 51.002, the Notice of Sale was posted at least twenty-one (21) days prior to the date of sale at the proper location designated by the County Commissioner's Court. Additionally, a copy of the Notice of Sale was filed at least twenty-one (21) days prior to the date of sale in the office of the County Clerk of the county in which the sale occurred.

4. At the time of the Foreclosure Sale and twelve (12) months prior to sale, the debtors were not in the armed services of the United States of America.

5. At the time of the Foreclosure Sale the debtors were alive, were not protected by any stay under the United States Bankruptcy Code and were not involved in any divorce proceedings where a receiver had been appointed.


_____
Keller Mackie

STATE OF TEXAS            §
                          §
COUNTY OF _____         §

SUBSCRIBED AND SWORN TO before me by Keller Mackie on this ___ day of _____, 2018.

_____
Notary Public, State of Texas

MWZ#:            16-000039-975
Property Address:  14103 W COUNTY ROAD 122, ODESSA, TX 79765

E HARRIS KAY
Notary Public, State of Texas
Comm. Expires 05-06-2019
Notary ID 12861348-2



# NOTICE OF FORECLOSURE SALE

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OR ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

1. *Property to Be Sold.* The property to be sold is described as follows: LOT EIGHT (8), BLOCK ONE (1), RIDGEWOOD SUBDIVISION, A SUBDIVISION OF MIDLAND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF OF RECORD IN CABINET A, PAGE 122, PLAT RECORDS OF MIDLAND COUNTY, TEXAS.

2. *Instrument to be Foreclosed.* The instrument to be foreclosed is the Deed of Trust dated 02/29/2016 and recorded in Document 2016-6318 real property records of Midland County, Texas.

3. *Date, Time, and Place of Sale.* The sale is scheduled to be held at the following date, time, and place:

| | |
|---|---|
| Date: | 02/06/2018 |
| Time: | 10:00 AM |
| Place: | Midland County Courthouse, Texas at the following location: THE FOYER AND SOUTH ENTRANCE AT THE FRONT OF THE COURTHOUSE OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE or as designated by the County Commissioners Court. |

4. *Terms of Sale.* The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust.

5. *Obligations Secured.* The Deed of Trust executed by RENA ROXANNA ANDREWS, provides that it secures the payment of the indebtedness in the original principal amount of $65,000.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. Everett Financial, Inc., DBA Supreme Lending is the current mortgagee of the note and deed of trust and SUPREME LENDING is mortgage servicer. A servicing agreement between the mortgagee, whose address is Everett Financial Inc., DBA Supreme Lending c/o SUPREME LENDING, 14801 Quorum Drive, Suite 300, Dallas, TX 75254 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

6. *Substitute Trustee(s) Appointed to Conduct Sale.* In accordance with Texas Property Code Sec. 51.0076, the undersigned attorney for the mortgage servicer has named and appointed, and by these presents does name and appoint SHELLEY NAIL, DONNA TROUT, JOHNIE EADS OR MICHAEL W. ZIENTZ, Substitute Trustee to act under and by virtue of said Deed of Trust.

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

Mackie Wolf Zientz & Mann, P.C.
Brandon Wolf, Attorney at Law
L. Keller Mackie, Attorney at Law
Lori Liane Long, Attorney at Law
Tracey Midkiff, Attorney at Law
Marissa Sibal, Attorney at Law
Parkway Office Center, Suite 900
14160 North Dallas Parkway
Dallas, TX 75254

SHELLEY NAIL, DONNA TROUT, JOHNIE EADS OR
MICHAEL W. ZIENTZ
c/o AVT Title Services, LLC
1101 Ridge Rd. Suite 222
Rockwall, TX 75087

## Certificate of Posting

I am _____ whose address is c/o AVT Title Services, LLC, 1101 Ridge Rd., Suite 222, Rockwall, TX 75087. I declare under penalty of perjury that on _____ I filed this Notice of Foreclosure Sale at the office of the Midland County Clerk and caused it to be posted at the location directed by the Midland County Commissioners Court.

16-000039-975 // 14103 W COUNTY ROAD 122, ODESSA, TX 79765